UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RASHAD C.,

       Plaintiff,

v.

       Hon. Robert J. Jonker

COMMISSIONER OF
SOCIAL SECURITY,

       Case No. 1:25-cv-675

       Defendant.

_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g),

to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for

Supplemental Security Income (SSI) under Title XVI of the Social Security Act.

Section 405(g) limits the Court to a review of the administrative record and provides that

if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The

Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks

review of the Commissioner's decision.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to

submit proposed findings of fact and recommendations for disposition of social security appeals,

I recommend that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the

record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human

Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is

limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Fact finding is the Commissioner's province, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In applying this standard, a court must consider the evidence as a whole, while accounting for any evidence that fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard contemplates a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords the administrative decision maker considerable latitude and precludes reversal simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff filed an application for SSI on September 23, 2021, alleging that he had been disabled since April 1, 2009, due to back problems and depression. (PageID.458, 582–92.) Plaintiff later amended his alleged onset date to his application date. (PageID.206.) He was 47 years old at the time he filed his application. (PageID.458.) Plaintiff earned a GED and had no previous work.

(PageID.218, 1041.) Plaintiff's application was denied initially and on reconsideration, after which he requested a hearing before an Administrative Law Judge (ALJ).

On November 30, 2023, ALJ Brian Burgtorf held a hearing by telephone and received testimony from Plaintiff, who was represented by counsel, and Melanie Frye, an impartial vocational expert (VE). (PageID.320–342.) On January 30, 2024, the ALJ issued a written decision finding that Plaintiff was not entitled to benefits because he was not disabled since his application date of September 23, 2021. (PageID.205–220.) The Appeals Council denied Plaintiff's request for review on January 30, 2025. (PageID.16–19.) Therefore, the ALJ's ruling became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 434 (6th Cir. 2007). Plaintiff timely initiated this civil action for judicial review on June 18, 2025.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4.  If an individual is capable of performing his past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

After determining that Plaintiff had not engaged in substantial gainful activity since his application date, the ALJ found that Plaintiff has severe impairments of lumbar spinal stenosis; obesity; major depressive disorder; intellectual disorder; anxiety disorder; and personality disorder. (PageID.PgeID.208.)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.210–12.) The ALJ then found that Plaintiff had the RFC to perform sedentary work within the meaning of 20 C.F.R. § 416.967(a), except:

> [H]e requires a handheld assistive device for ambulation; can never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and can never work around extreme cold, humidity, nor hazards, such as unprotected heights. In terms of his mental work capacity, claimant can understand, remember, and carry out simple instructions, and make simple work-related decisions; cannot work at a production rate pace, such as on an assembly line; and can tolerate occasional changes in the routine work environment.

(PageID.212.)

At step four, the ALJ found that Plaintiff had no past relevant work. (PageID.218.) At step five, based on the VE's testimony, the ALJ found that an individual of Plaintiff's age, education, work experience, and RFC could perform the occupations of order clerk, charge account clerk, and inspector, approximately 78,000 of which existed in the national economy. (PageID.219.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (stating that "[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## **DISCUSSION**

Plaintiff raises two issues in his appeal: (1) the ALJ committed harmful error when he rejected portions of the medical opinion provided by treating source Rachel Sedgewick, PA-C, for illogical and unsupported reasons, in violation of 20 C.F.R. § 416.920c; and (2) the ALJ applied improper legal standards when assessing Plaintiff's subjective complaints under SSR 16-3p where the ALJ failed to consider non-medical evidence and did not articulate adequate and specific reasons for rejecting the plaintiff's testimony. (ECF No. 12 at PageID.2469.)

## I.    Opinion Evidence

The ALJ evaluated the opinion evidence pursuant to 20 C.F.R. § 416.920c. Under that regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion

from a treating source. 20 C.F.R. § 416.920c(a). Instead, an ALJ will articulate his or her determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. § 416.920c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.920c(c)(1)–(5). In general, the ALJ must explain his or her consideration of the supportability and consistency factors, but is not required to explain how the remaining factors were considered. 20 C.F.R. § 416.920c(b)(2) and (3).

"[S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021). "'Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [his] reasoning.'" *Sadger v. Comm'r of Soc. Sec.*, No. 2:20-cv-11900, 2021 WL 4784271, at *13 (E.D. Mich. Aug. 23, 2021), *adopted by* 2021 WL 4316852 (E.D. Mich. Sept. 23, 2021) (quoting *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-588, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021)).

The ALJ evaluated PA Sedgewick's August 8, 2023 opinion as follows:

*Rachel Sedgewick, PA-C*, claimant's physician's assistant, completed a work capacity form in support of claimant's application. Ms. Sedgewick opined claimant had severe lumbar spinal stenosis that was worsening and might require surgery in the future. Ms. Sedgewick opined claimant could not sustain a full time work schedule. Ms. Sedgewick opined claimant could lift no more than 10 pounds, needed to have the option to alternate between sitting and standing every 15 minutes; required a cane to ambulate; and should avoid hazards. Ms. Sedgewick opined claimant was off task more than 15% of the time and would miss at least

four days of work each month due to back pain (August 2023, B15F). Ms. Sedgewick is an acceptable source for assessment of physical impairments and physical work capacity. However, Ms. Sedgewick's opinion is not entirely persuasive because it overstates the degree of limitation reflected elsewhere in the record. Specifically, as explained throughout this finding, claimant is limited to lifting 10 pounds occasionally and should avoid hazards. However, the evidence shows claimant is able to live independently. There is no evidence he is off task 15% of the time because, for example, claimant can stay on task well enough to operate a motor vehicle (B4F). In terms of claimant's missing work, there is no evidence claimant regularly misses or cancels his appointments or is otherwise so undependable as to miss more than four days of work every month. In terms of the sit/stand option offered by Ms. Sedgewick, the studies of claimant's lumbar spine show no evidence of spinal cord compromise or other abnormalities to support a sit/stand option (B13F:7 and B22F:8). There is no evidence of deconditioning in claimant's legs (B4F). There is no evidence claimant has exhausted conservative care options for his lumbar spine condition or has been a candidate for surgery during the timeframe at issue. Ms. Sedgewick's comments about future surgery speculated upon the potential outcome of conservative care (i.e. nerve blocks, spinal cord implants, etc.). For these reasons, Ms. Sedgwick's opinion is not entirely persuasive.

(PageID.216.)

Plaintiff faults the ALJ's persuasiveness analysis in three respects, arguing that his reasons for not accepting Ms. Sedgewick's opined limitations were illogical and not supported by substantial evidence. First, Plaintiff contends that the ALJ's rejection of the "off task" limitation because Plaintiff could stay on task well enough to operate a motor vehicle failed to consider the examination note's actual report that Plaintiff arrived at the "clinic via personal vehicle he drove himself after a short commute." (ECF No. 12 at PageID.2478 (quoting PageID.1548).) Plaintiff argues that the ALJ failed to obtain any information at the hearing about his driving habits, and his ability to drive short distances is not inconsistent with Ms. Sedgwick's opinion that Plaintiff would be off-task 15% of an eight-hour workday. (*Id.*) But this argument fails to consider the ALJ's statement in context. After acknowledging Ms. Sedgwick's 10-pound lifting and avoidance-of-hazard limitations as consistent with the record, the ALJ noted that Plaintiff was able to live independently and found no evidence that Plaintiff was off-task 15% of the time. The ALJ cited

the driving evidence as an example of Plaintiff's ability to stay on task. Plaintiff is correct that driving a short distance does not show that he would not be off task after working several hours, but it is *some* evidence of ability to remain on task bolstering the ALJ's finding of no evidence supporting the opposite conclusion. Thus, the ALJ complied with the regulation by articulating his consideration of the opined limitation's consistency with the medical and other evidence in the record. His finding here was not illogical.

Next, Plaintiff takes issue with the ALJ's finding that Ms. Sedgwick's work absences limitation was inconsistent with a lack of evidence showing that Plaintiff regularly missed or canceled appointments. Plaintiff contends that the ALJ "falsely equated" an ability to attend a medical appointment with an ability to work an eight-hour day. (*Id.* at PageID.2479.) But the ALJ did not draw this conclusion. Rather, he reasonably concluded that Plaintiff's regular attendance at medical appointments—sometimes many times per month—undermined Ms. Sedgwick's opinion that Plaintiff would miss four or more days per month. This was an appropriate basis to discount the work absences opinion. *See Sadger v. Comm'r of Soc. Sec.*, No. 2:20-cv-11900, 2021 WL 4784271, at *14 (E.D. Mich. Aug. 23, 2021), *adopted by* 2021 WL 4316852 (E.D. Mich. Sept. 23, 2021) (holding that the ALJ properly discounted the medical provider's opinion that the plaintiff would miss four or more days of work per month because the plaintiff "did not regularly miss or cancel treatment appointments, even walking to them when he did not have transportation"); *Morris v. Berryhill*, No. 1:17-CV-212, 2019 WL 1129990, at *10 (E.D. Mo. Mar. 12, 2019) (concluding that the ALJ properly discounted a treating psychiatrist's opinions concerning absenteeism where there was "no evidence that Plaintiff was frequently late to, or failed to show up for, her appointments with [the psychiatrist] or other providers"). Moreover, as judges in this district have consistently held, an opinion regarding absenteeism is not considered a medical

opinion under the regulations. *See*, *e.g.*, *Chicky v. Comm'r of Soc. Sec.*, No. 1:17-cv-819, 2018 WL 3720065, at *7 (W.D. Mich. July 23, 2018), *adopted by* 2018 WL 3708053 (W.D. Mich. Aug. 2, 2018) ("'A treating physician's estimate of how often a patient who is not working would likely be absent from work if he had a job is not a medical opinion, and it is not entitled to any particular weight.'" (quoting *Murray v. Comm'r of Soc. Sec.*, No. 1:10-cv-297, 2011 WL 4346473, at *7 (W.D. Mich. Aug. 25, 2011), *adopted by* 2011 WL 4346386 (W.D. Mich. Sept. 15, 2011))); *Valdes v. Comm'r of Soc. Sec.*, No. 1:08-cv-872, 2010 WL 911181, at *8 (W.D. Mich. Mar. 12, 2010) (same).

Last, Plaintiff takes issue with the ALJ's basis for not including the sit-stand limitation, which the ALJ found unsupported because imaging of Plaintiff's lumbar spine revealed no evidence of spinal cord compromise or other abnormalities. Plaintiff disagrees with this conclusion and cites reasons why the evidence supported his need for a sit/stand option.[2] As an initial matter, Plaintiff's argument that the ALJ "play[ed] doctor" by substituting his own judgment for that of Ms. Sedgewick and abandoned his role as adjudicator by interpreting "raw medical data" is not well taken. (ECF No. 12 at PageID.2479–80.) An ALJ impermissibly "plays doctor" where he substitutes his knowledge for that of a physician or medical expert and interprets raw medical data.

---

[2] Plaintiff's argument on this issue is largely academic. Although neither the ALJ nor Plaintiff's counsel raised the issue with the VE at the hearing, vocational experts repeatedly affirm that the sedentary-level positions Ms. Frey identified—order clerk, charge account clerk, and inspector—provide a sit/stand option. *See Baranich v. Barnhart*, 128 F. App'x 481, 485 (6th Cir. 2005) (inspector); *Randolph v. Colvin*, No. 1:15-CV-1451, 2016 WL 1626949, at *6 (N.D Ohio Apr. 25, 2016) (charge account clerk and order clerk); *Steigerwald v. Comm'r of Soc. Sec.*, No. 1:12 CV 2739, at *2 (N.D. Ohio Sept. 23, 2013) (charge account clerk); *Wells v. Comm'r of Soc. Sec.*, No. 1:08-cv-148, 2009 WL 648603, at *2 (S.D. Ohio Mar. 10, 2009) (charge account clerk); *Allshouse v. Comm'r of Soc. Sec.*, No. 07-12516, 2008 WL 4372646, at *4 (E.D. Mich. Sept. 19, 2008) (inspector). In fact, Ms. Frye has previously confirmed that the order clerk position provides a sit/stand option. *See Shelly P. v. Kijakazi*, No. 4:23-cv-11228, 2024 WL 1793558, at *6–7 (E.D. Mich. Mar. 21, 2024), *adopted by* 2024 WL 1776358 (E.D. Mich. Apr. 24, 2024).

*See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726 (6th Cir. 2013). But "[a]n ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). Moreover, an ALJ does not "interpret raw medical data" where x-rays or other records have already been interpreted by a treating physician or radiologist. *See Rudd*, 531 F. App'x at 727 (finding that the ALJ did not interpret raw medical data beyond her ability where x-rays had already been read and interpreted by a radiologist and that the ALJ properly evaluated the evidence of the claimant's physical condition to construct an RFC without the assistance of a medical expert). Here, the ALJ considered imaging studies that had already been interpreted by medical professionals and considered them as part of his RFC assessment.

As for Plaintiff's assertion that the March 2022 and September 2023 CT scan support his need for a sit/stand option, the ALJ's decision shows that he considered the same evidence Plaintiff cites but came to a different conclusion. (PageID.216 (citing PageID.2010, 2394).) Nonetheless, the ALJ still cited this same evidence to adopt significant limitations. (PageID.214, 216.) This was a permissible result, and Plaintiff's argument to the contrary is simply an invitation for the Court to second-guess the ALJ. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). Accordingly, Plaintiff fails to demonstrate reversible error.

## II.    Subjective Symptoms

An ALJ evaluates a claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms of an alleged disability in accordance with SSR 16-3p. "While SSR 16-3p eliminated the use of the term 'credibility,' the regulatory analysis remains the same."

*Karmol v. Comm'r of Soc. Sec.*, No. 1:17-cv-977, 2019 WL 1349485, at \*3 (W.D. Mich. Mar. 26, 2019). An ALJ should consider the factors set forth in 20 C.F.R. § 416.929(c)(3) but "is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Comm'r of Soc. Sec.*, No. 1:12-cv-1084, 2014 WL 1577525, at \*3 (W.D. Mich. Apr. 21, 2014) (collecting cases). SSR 16-3p explains that an ALJ's decision must "contain specific reasons for the weight given to an individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so that the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at \*10. The same rules of review apply to an ALJ's assessment of a claimant's symptoms under SSR 16-3p that applied to a credibility assessment under SSR 96-7p. That is, the ALJ's determination must be afforded deference so long as it is supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *see also Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 (6th Cir. 2020) (noting that "[i]t is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements").

Plaintiff contends that the ALJ's analysis was faulty because he "did not point to any specific evidence that was inconsistent with the Plaintiff's testimony regarding his symptoms." (ECF No. 12 at PageID.2482.) As noted in *Peters v. Commissioner of Social Security*, No. 19-cv-72 (W.D. Mich. Jan. 10, 2020), *adopted by* 2020 WL 489220 (W.D. Mich. Jan. 30, 2020), however, courts have rejected a rule "that the ALJ must accept a claimant's 'complaint' or limitation unless it is directly contradicted by evidence." *Id.* at \*10. *Peters*, in turn, cited another court's persuasive analysis of the issue:

> Contrary to Ms. Pratt's claim, the text of 20 C.F.R. § 404.1529 does not require an ALJ to fully accept a claimant's testimony unless it is directly contradicted by objective evidence in the record. The regulation, which admits that such direct contradiction will be hard to come by, as "symptoms, such as pain, are subjective

> and difficult to quantify," instead sets up a looser standard. This analysis is not unbounded, however. The regulation clearly states that an ALJ "will not reject your statements . . . solely because the available objective medical evidence does not substantiate your statements." *Id.* § 404.1529(c)(2). But the ALJ here did not do that. He examined the record and set out a logical set of reasons for believing that Ms. Pratt's symptoms were not as severe as she claimed. On the basis of that reasoned analysis, the ALJ then declined to fully accept Ms. Pratt's claims.

*Id.* (quoting *Pratt v. Comm'r of Soc. Sec.*, No. 1:10-cv-438, 2012 WL 5844969, at \*8 (W.D. Mich. Nov. 19, 2012)). Thus, the ALJ's failure to cite evidence that was inconsistent with, or contradicted, Plaintiff's subjective allegations is no basis to disturb the ALJ's decision.

Plaintiff argues that the ALJ erred by failing to analyze and weigh his daily activities as supportive of his complaints of disabling pain, "beyond the idle observation the Plaintiff is able to make his 'own care decisions' and 'manage his own resources.'" (*Id.* at PageID.2483.) In fact, the ALJ also considered Plaintiff's ability to perform "his own personal care," "complete simple household chores," and "play video games." (PageID.211, 215.) Regardless, as mentioned above, the ALJ was not required to discuss every factor set forth in the regulation or conduct a factor-by-factor analysis. Still, regarding Plaintiff's spine impairment, the ALJ cited and discussed the imaging studies and his course of treatment, including physical therapy, injections, and exercises. (PageID.213–14.) The ALJ found no evidence suggesting that Plaintiff "had exhausted conservative care or was a candidate for surgery." (PageID.214.) These were appropriate considerations. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 638 (6th Cir. 2016) (noting that the plaintiff's "routine and/or conservative treatment for the allegedly disabling impairments" was a proper basis to discount his allegations of pain). The ALJ also considered physical examination findings, including largely normal findings from Plaintiff's September 2023 trip to the emergency room for low back pain. (PageID.214.) Finally, the ALJ discussed Plaintiff's prescriptions for Flexeril, Norco, and Celebrex. (PageID.213–14.) Similarly, regarding Plaintiff's mental impairments, the ALJ noted the absence of required emergent or inpatient psychiatric care,

his receipt of conservative mental health treatment consisting of therapy and medications prescribed by his family doctor, and largely normal mental status findings. (PageID.214–15.)

Finally, as Defendant notes, the ALJ also considered the State agency medical consultants' prior administrative findings that Plaintiff retained the RFC to perform light work with standing/walking four hours of an eight-hour workday and postural limitations. (PageID.216.) Although the ALJ found the postural limitations persuasive, he assessed a more restrictive RFC for sedentary work, including use of a cane and avoidance of hazards, to accommodate Plaintiff's non-severe impairments and his worsening lumbar spine condition. (*Id.*) Thus, the ALJ's decision reflects that he considered the record as a whole and properly evaluated Plaintiff's subjective complaints in adopting a very restrictive RFC.

In sum, although Plaintiff disagrees with the ALJ's evaluation of his subjective symptoms, the ALJ's findings  "are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001). Where, as here, substantial evidence supports the ALJ's conclusion, the ALJ's findings must stand. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Although Plaintiff would weigh the evidence differently, a court may not do so on appeal.

## CONCLUSION

For the reasons stated herein, I recommend that the Commissioner's decision be **affirmed.**

Dated: March 11, 2026                                          /s/ Sally J. Berens
                                                                      SALLY J. BERENS
                                                                      U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

13

objections within that time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).